UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SARA J. H., | ) |
| | ) |
|        Plaintiff | ) |
| | ) |
| v. | )   No. 2:20-cv-00304-GZS |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
|        Defendant | ) |

### REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability (SSD) appeal raises the question of whether the administrative law judge (ALJ) supportably found that the plaintiff had no medically determinable impairment of fibromyalgia and no severe mental impairment. The plaintiff seeks remand on the bases that the ALJ erred in (i) finding that the plaintiff's fibromyalgia was not a severe medically determinable impairment, (ii) providing an inadequate explanation for discounting a treating physician's opinion regarding fibromyalgia, and (iii) failing to craft a residual functional capacity (RFC) taking into account the combined effects of all of her impairments. *See* Plaintiff/Appellant's Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 15) at 10-19. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted as the defendant in this matter.

[2] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff was last insured for SSD benefits through March 31, 2018, Finding 1, Record at 72; that, through her date last insured (DLI), she had the medically determinable impairments of a history of laparoscopic assisted vaginal hysterectomy (LAVH) and bilateral salpingectomy, depression/anxiety/attention deficit disorders, and a history of psychogenic non-epileptic spells, Finding 3, *id.*; that, through her DLI, she did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months and, therefore, did not have a severe impairment or combination of impairments, Finding 4, *id.* at 76; and that she, therefore, was not disabled at any time from December 20, 2016, her alleged onset date of disability, through March 31, 2018, her DLI, Finding 5, *id.* at 79. The Appeals Council declined to review the decision, *id.* at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Sec'y of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir.

1986). At this step, a claimant must first produce evidence that she has a medically determinable physical or mental impairment(s), which "must be established by objective medical evidence from an acceptable medical source" rather than symptoms, diagnoses, or medical opinions. 20 C.F.R. § 404.1521. When a claimant produces evidence of a medically determinable impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *McDonald*, 795 F.2d at 1124 (quoting Social Security Ruling 85-28).

## I. Discussion

### A. Challenge to ALJ's Handling of Fibromyalgia

The ALJ acknowledged that the plaintiff primarily alleged an inability to perform full-time work due to a panoply of symptoms, "including diffuse joint/muscle pain, headaches, fatigue, poor sleep, cognitive/attention difficulties ('brain fog'), sensation problems (transient tingling or numbness in various areas), and muscle weakness (particularly with activity)," and that she and at least some of her treating sources, particularly Richard Dubocq, M.D., attributed those symptoms "to Lyme disease and fibromyalgia primarily, with a possible component of neuropathy (of an unspecified origin)." Record at 72-73. However, she concluded that, although the plaintiff had "reported experiencing these symptoms for some time, the evidence is insufficient to show that [her] reported fibromyalgia, Lyme disease, or possible neuropathy can be confirmed as medically determinable impairments under the Regulations." *Id*. She explained:

> With regard to fibromyalgia, SSR [Social Security Ruling] 12-2p instructs that fibromyalgia can be considered to be a medically determinable impairment if medical evidence establishes either the 1990 ACR [American College of Rheumatology] criteria or the 2010 ACR criteria. In this case, at hearing, independent medical expert Dr. [James W.] Washburn testified during the

>supplemental hearing that the medical evidence of record did not confirm the presence of fibromyalgia as a medically determinable impairment under SSR 12-2p. The evidence of record does seem to support his conclusion in this regard. This is also the finding of [agency nonexamining consultants] Drs. [Archibald] Green and [Robert] Hayes, and the undersigned finds these to be persuasive for the most part. Notably, the [agency nonexamining] consultant [L. Cylus, M.D.] who made findings in an informal remand was also unable to settle on a diagnosis.

*Id*. (citations omitted).³

The ALJ elaborated that, (i) while Dr. Dubocq completed a medical opinion prior to the plaintiff's alleged onset of date of disability indicating that she "exhibited pain at all tender points" and noted "pressure points" on examination, he "never noted specific findings of at least 11 of 18 bilateral tender points, found above and below the waist, as required under SSR 12-2p[,]" (ii) no other examination confirmed the existence of the required bilateral tender points, and (iii) it was "also not clear that other causes of such symptoms were ruled out." *Id*. at 73-74. With respect to the third point, she noted, "the record provides few clear answers as to the etiology of the [plaintiff]'s reported symptoms, which is why a medical expert [Dr. Washburn] was consulted in this case." *Id*. at 74. She explained that she had "accept[ed] [Dr. Washburn's] testimony in this regard." *Id*.

As the ALJ noted, *see id*. at 73, Drs. Green and Hayes, as well as Dr. Washburn, found no medically determinable impairment of fibromyalgia. On initial review on June 5, 2018, with the

---

³ Both the 1990 ACR criteria and the 2010 ACR criteria require that alternative causes of the listed symptoms, signs, and, in the case of the 2010 ACR criteria, co-occurring conditions be excluded before a finding of fibromyalgia as a medically determinable impairment can be made. *See* SSR 12-2p, 2012 WL 3104869, at *2-3 (July 25, 2012). SSR 12-2p lists, as examples of such alternative causes, "rheumatologic disorders, myofascial pain syndrome, polymyalgia rheumatica, chronic Lyme disease, and cervical hyperextension-associated or hyperflexion-associated disorders." *Id* at *3 n.7. The 1990 ACR criteria require additional showings of (i) "[a] history of widespread pain – that is, pain in all quadrants of the body . . . and axial skeletal pain . . . – that has persisted (or that persisted) for at least 3 months[,]" and (ii) "[a]t least 11 [of 18 specified] positive tender points on physical examination . . . found bilaterally (on the left and right sides of the body) and both above and below the waist." *Id*. at *2-3. The 2010 ACR criteria require additional showings of (i) "[a] history of widespread pain" and (ii) "[r]epeated manifestations of six or more FM [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome[.]" *Id*. at *3 (footnotes omitted).

4

benefit of records including those of Dr. Dubocq, *see id*. at 173-75, Dr. Green concluded that there was "no objective MER [medical evidence of record] in support of chronic Lyme disease, fibromyalgia, diminished visual acuity, or neuropathy." *Id* at 177. On reconsideration on October 3, 2018, Dr. Hayes noted that the plaintiff had "a long history of chronic pain disorder, but [that] physical exams [were] consistently normal." *Id* at 187. He also observed that, although the plaintiff had "been extensively treated for several tick[-]borne diseases[,] there was no MER confirming these diagnoses." *Id*. Neither Dr. Green nor Dr. Hayes assessed any physical limitations. *See id*. at 178, 189.

On informal remand on March 26, 2019, Dr. Cylus described the plaintiff as having a "history of dx [diagnosis] of FM and at least some exams with positive tender points." *Id*. at 510. He found "[n]o MER for ongoing radiculopathy though 6/20/17 chiropractic statement relates positive facet joint pain[,]" and "[n]o ongoing neuropathy and though treated for Lyme's, no documentation which specifically confirms Lyme disease or chronic Lyme findings." *Id*. He described the "[c]ombination" as "severe but not of listing level[,]" assessing an RFC for the period from the plaintiff's alleged onset date of disability through her DLI. *Id*.

The plaintiff asserts that substantial evidence supports a finding that her fibromyalgia was both medically determinable and severe. *See* Statement of Errors at 12, 17. Yet, as the commissioner points out, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF 16) at 8-9, the standard of review on appeal to this court is not whether substantial evidence supports a claimant's position but, rather, whether it supports the findings of the ALJ, *see, e.g.*, 42 U.S.C. § 405(g); *Manso-Pizarro*, 76 F.3d at 16. Both the testimony of a medical expert at hearing and the prior administrative findings of agency nonexamining consultants can constitute substantial evidence in support of an ALJ's decision. *See, e.g., Tina M.*

*C. v. Saul*, No. 2:19-cv-00501-DBH, 2020 WL 5057587, at *4-5 (D. Me. Aug. 26, 2020) (rec. dec., *aff'd* Sept. 17, 2020) (medical expert's testimony); *Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) (agency nonexamining consultant's report).

Absent a material error in an ALJ's resolution of conflicts in the evidence, including the expert opinion evidence of record, this court defers to an ALJ's weighing of such evidence – the core duty of an ALJ. *See, e.g., Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts."). Accordingly, "[t]he mere fact that a claimant can point to evidence of record supporting a different conclusion does not, in itself, warrant remand." *Malaney v. Berryhill*, No. 2:16-cv-00404-GZS, 2017 WL 2537226, at *2 (D. Me. June 11, 2017) (rec. dec., *aff'd* July 11, 2017), *aff'd*, No. 17-1889, 2019 WL 2222474 (1st Cir. May 15, 2019).

The plaintiff relies, in part, on citation to evidence of record that, in her view, warrants a different conclusion than reached by the ALJ. *See* Statement of Errors at 10-17. This amounts to an unavailing invitation to the court to reweigh the evidence. *See, e.g., Malaney*, 2017 WL 2537226, at *2. While she also attempts to demonstrate reversible error in the ALJ's weighing of the evidence, that attempt falls short.

She first argues that the ALJ's reliance on Dr. Washburn's testimony was misplaced because "[h]is testimony was inconsistent and confusing" in certain respects and "incomplete" insofar as he did not discuss whether she had "[r]epeated manifestations of six or more fibromyalgia symptoms, signs or co-occurring conditions" pursuant to the 2010 ACR criteria. Statement of Errors at 11-12 (citation and internal quotation marks omitted).

Yet, she does not address Dr. Washburn's testimony that other causes of her symptoms had not been ruled out. *See* Statement of Errors at 11-12; Record at 110 (testimony that "[f]ibromyalgia is basically a diagnosis of exclusion where everything else has been ruled out[,] [a]nd I didn't see . . . that the rheumatologist had done any X-rays to look for any erosions of the joints[.]"); *id*. at 114-15 (describing plaintiff's symptoms as "polyarthralgias and polymyalgias" – that is, "joint aches and muscle aches" – for which there was no "clear-cut etiology"; observing, "[t]here's multiple etiologies including somatoform disorders[,]" which are "more of a psychiatric disorder"). As noted above, SSR 12-2p requires that a claimant demonstrate that other causes of signs, symptoms, and, in the case of the 2010 ACR criteria, co-occurring conditions have been ruled out. A failure to do so is fatal to a finding of a medically determinable impairment of fibromyalgia pursuant to both the 1990 and 2010 ACR criteria.

The plaintiff next challenges the ALJ's handling of the opinions and treatment records of Dr. Dubocq, asserting that these satisfied the requirement to demonstrate at least 11 of 18 bilateral tender points above and below the waist and that Dr. Dubocq noted that "diagnostic testing and a neurology consultation had ruled out multiple sclerosis, ALS, Lupus, and Rheumatoid arthritis as causes for [her] symptoms." Statement of Errors at 12. However, she concedes that "Dr. Dubocq felt [she] was suffering for the most part from several conditions at once, including Lyme disease, perhaps other tick-borne diseases and, at least at one point a neuropathy[.]" *Id*. at 14. Thus, Dr. Dubocq himself did not rule out conditions other than fibromyalgia as the cause of the plaintiff's symptoms.[4]

---

[4] To fill this gap, the plaintiff argues that "the evidence in the entire medical record, when taken as a whole, meets the requirement of 12-2p that other reasons for [her] symptom[s] were ruled out." Statement of Errors at 14-15. As discussed above, this amounts to an unavailing invitation to the court to reweigh the evidence.

7

The plaintiff, finally, challenges the ALJ's finding that Dr. Cylus was "unable to settle on a diagnosis[,]" asserting that "it was error for the ALJ to have reached any other conclusion . . . than that fibromyalgia was what Dr. Cylus was contemplating as the basis for his finding of a severity and for his assessment of an RFC." *Id*. at 16. Yet, Dr. Cylus described the "[c]ombination" of the plaintiff's conditions as "severe." Record at 510. In any event, the ALJ explained that she found "Dr. Washburn's assessment that the [plaintiff] does not have a medically determinable impairment to be the most reasonable finding based on the current record[,]" as a result of which the Cylus opinion was "not as persuasive as Dr. Washburn's." *Id*. at 76. The plaintiff provides no basis on which to disturb that weighing of the evidence.

The ALJ's determination that the plaintiff had no medically determinable fibromyalgia impairment, accordingly, is supported by substantial evidence.

In any event, as the commissioner argues in the alternative, *see* Opposition at 15-17, even if the ALJ had erred in so finding, any error was harmless. In this district, "an error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim." *Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010); *see also, e.g., Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). The plaintiff fails to carry this burden.

At the ALJ's request, Dr. Washburn assessed limitations that would account for the plaintiff's polyarthralgias or polymyalgias of uncertain etiology assuming that those were diagnoses she could "work with[.]" Record at 110-11. The ALJ then asked the vocational expert (VE) present at hearing whether a person with those limitations could perform either the plaintiff's

8

past relevant work or other work. *See id*. at 117-18. The VE stated that such a person could perform both the plaintiff's past relevant work, which was sedentary, and several light jobs. *See id*. The ALJ observed in her decision that, even if she had found a medically determinable physical impairment and assessed the limitations set forth by Dr. Washburn, which she supportably characterized as "consistent" with those of Dr. Cylus for the reasons discussed below, the plaintiff would not have been found disabled. *See id*. at 76.

Dr. Washburn's RFC assessment was identical to or more plaintiff-friendly than that of Dr. Cylus except that, whereas Dr. Cylus determined that the plaintiff could stand and/or walk or sit for about six hours in an eight-hour workday, Dr. Washburn found that she could stand and/or walk or sit for eight hours in an eight-hour workday. *Compare id*. at 111 *with id*. at 504-07. Yet, as the commissioner argues, *see* Opposition at 16, this is a distinction without a difference. A person limited to standing and/or walking or sitting for six hours in an eight-hour workday could perform the jobs that the VE identified in response to the ALJ's hypothetical question predicated on the Washburn testimony. *See, e.g.*, SSR 83-10, 1983 WL 31251, at *5-6 (1983) ("Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."; "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday[,]" and "[s]itting may occur intermittently during the remaining time.").

Any error in finding no medically determinable impairment of fibromyalgia, accordingly, was harmless.

### B. Challenge to ALJ's Handling of Mental Impairments

The ALJ deemed the plaintiff's medically determinable mental impairments of depression, anxiety, and attention deficit disorders nonsevere, finding no limitation in any of the so-called

"Paragraph B criteria" – the "four broad [mental] functional areas" pursuant to which the severity of medically determinable mental impairments is gauged. *See* Record at 75, 78-79; 20 C.F.R. § 404.1520a(c)(3)-(4). She explained that she relied on the prior administrative findings of agency nonexamining consultants, including C.W. Kang, M.D., which she deemed "largely persuasive[.]" Record at 75.

The plaintiff asserts that the ALJ instead impermissibly construed the raw medical evidence in so finding, given that Dr. Kang assessed mild limitations in three of the four Paragraph B criteria categories: interact with others, concentrate, persist, or maintain pace, and adapt or manage oneself. *See* Statement of Errors at 18-19. She contends that (i) "[n]o other records in the appeal record support a finding that [she] had no limitations whatsoever due to her mental impairments[,]" and (ii) "[t]here is a distinct difference between mental impairments that cause no limitations and mental impairments that cause mild limitations." *Id*. at 18.

As the commissioner rejoins, *see* Opposition at 18-19 & n.9, any error in not assessing mild Paragraph B limitations is harmless. Consistent with relevant regulations, Dr. Kang assessed no specific RFC limitations flowing from the plaintiff's mild mental limitations, *see* Record at 486-502; 20 C.F.R. § 404.1520a(d)(1), (3), and the plaintiff identifies no expert assessment of record of a mental RFC. Accordingly, even had the ALJ found mild limitations in one or more Paragraph B criteria, the end result – that the plaintiff had no mental limitations for purposes of her RFC – would have been the same.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 11th day of October, 2021.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge